IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02754-RM-STV

**DERWIN POWELL**, an individual
**JUSTIN MORENO**, an individual; and
**JESUS RAMOS**, an individual

   Plaintiff(s),

v.

**CLAYTON GROUP HOLDINGS., INC.** a Delaware corporation,

   Defendant(s).

---

### RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

   Plaintiffs, Derwin Powell, Justin Moreno, and Jesus Ramos, through undersigned counsel, submit the following Response to Defendant's Motion for Summary Judgment:

### INTRODUCTION

   Plaintiffs are all former employees of Defendant. Mr. Powell is African-American, and Messrs. Moreno and Ramos are Latin-American. Throughout their time at Clayton, all three were subjected to different types of discriminatory conduct and treatment, including verbal harassment, disparate discipline, and disparate work assignments. All three were discharged on February 25, 2016, purportedly part of a reduction in force. However, their positions were actually not eliminated at all. They were immediately re-listed the next day under a different job title on Clayton's website. All three were eventually replaced by white employees.

   In its motion, Defendant makes a number of arguments directed at claims Plaintiffs have never made—claiming, for example, that Plaintiffs cannot sustain independent causes of action for the mistreatment they suffered while at Clayton when Plaintiffs have only raised such issues as

probative of the ultimate discriminatory decision: their discharge. As to Plaintiffs' discharge, Defendant asserts its decision was made for business reasons wholly unconnected with Plaintiffs' race, national origin, or participation in protected activity. A reasonable finder of fact would by no means be compelled to accept Clayton version of events as true. Construing all evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, a reasonable jury could conclude Clayton discharged them due to their race, national origin, and/or participation in protected activity. The motion should therefore be denied.

## SUMMARY OF FACTUAL BACKGROUND

Per Section IV(B)(2)(b)(ii) of the Court's Practice Standards, a responsive statement of material facts is attached as Exhibit 1 to this Response. Also attached are declarations and affidavits of Derwin Powell, Justin Moreno, Jesus Ramos, Neil Hinch, and Megan Courtney; Depositions of Defendant's 30(b)(6) representatives Anjanette Derix and Kathryn Withrow; and supporting documentary evidence. Representations of fact designated "undisputed" are done so for the purposes of this motion only.

Plaintiffs worked as Compliance Analysts for Clayton. Powell began in January of 2013, Moreno began in January of 2014, and Ramos began a second term of employment in July of 2014. All three are members of a protected class. Powell is African-American. Moreno and Ramos are Latin American. 42 U.S.C. § 2000e-2(a)(1); Colo. Rev. Stat. § 24-34-402(1)(a). As Compliance Analysts, Plaintiffs would complete modules for individual loan files. The modules consisted of a series of questions which needed to be answered for each file. The specific questions would vary depending on the file, and the team reviewing it. For example, modules for the Foreclosure team were different than modules for the Loss Mitigation, CFPB, or Bankruptcy teams. Analysts' work

would be reviewed by a Quality Control team member and given a numerical score, which contributed heavily to their performance evaluations.

The design of the teams and the modules, however, was not done equitably, and was engineered to the specific disadvantage of minority employees. Minority employees were packed into the Loss Mitigation and Foreclosure teams, where they were not only given more difficult assignments, but were scored in a way that did not account for the increased difficulty of the modules. This diminished their opportunities for career advancement, made it more difficult to earn performance bonuses, and made it more likely that they would be flagged for performance issues.

Even within the teams, preference was given to white males. As one of Plaintiffs' white coworkers, Megan Courtney, observed, "racial minorities . . . . were often grouped together on certain teams and the standards they were held to were changing regularly, which caused confusion and frustration. The work I was assigned was far more straightforward and management was much more accommodating to me by comparison." She likewise observed that "management went out of their way to group minorities together, which made it appear as though the management was uncomfortable around them."

While working at Clayton, Plaintiffs were subjected to harassment based on their race and national origin by their superiors. For example, Powell was told that he was "from the ghetto" because he was black. Ramos was told "fuk essays" and "la raza is for [dogs]" because of his Hispanic heritage. Moreno, along with Powell and Ramos, were targeted for discipline for minor issues such as tardiness, breaks, or leaving files open, infractions which did not result in discipline or reprimand for white employees. All three employees, at different times, raised concerns with their superiors. Powell brought up the issue of racial disparity in the assignment of teams and

grading of modules in early 2015. Contrary to Defendant's assertion, he never "retracted" his concerns. However, he was reprimanded and threatened with termination for his "attitude" and "excuse making," so he ceased attempting to dispute negative performance scores since the system was irreparably rigged. Moreno reported to Lynda Malmborg, Vice President of Human Resources, that his immediate supervisor, Matt Easler, was singling him out for discipline. Ramos raised concerns on two occasions prior to his termination, once on February 12, 2016 with immediate supervisors Chris Lane and Jeff Wingfield, and once on February 18, 2016, to Lynda Malmborg.

Clayton discharged the Plaintiffs on February 25, 2016, purportedly as a cost-saving measure which required the elimination of their positions. Clayton has provided inconsistent information as to even basic aspects of the "reduction in force," such as how many employees were considered for elimination, and actually eliminated. Clayton now that ten employees received a "1" rating, and that eleven employees were terminated. In Clayton's response to each employee's EEOC charge, it claimed only eight employees were terminated.

Clayton had previously evaluated employees using a qualitative scale, but, without explanation, used the ad hoc 1-4 rating system for the RIF. Other than a single email directing that certain CFIS team members be rated, Clayton has disclosed no records regarding the discussions regarding the reasons for the Plaintiffs termination, though its 30(b)(6) representatives confirmed that such records would have been generated, and that Clayton abides by a company-wide document retention policy.

Moreover, the day after the "reduction in force," February 26, 2018, Clayton listed a new job opening on its website for a "Mortgage Servicing Specialist."  The posting was available to visitors of Clayton's website. The job was for the Denver office. Its description was identical to

Plaintiffs' job duties as Compliance Analysts. Defendant's 30(b)(6) representative confirmed that each listed responsibility for a "Mortgage Servicing Specialist" was one which would be handled by a Compliance Analyst. Before the EEOC, Clayton's then-Vice President of Human Resources Lynda Malmborg falsely claimed that no such listing existed, and that the only job posting was for the Tampa Bay office which had been placed in error. The "Mortgage Servicing Specialist" position was also re-listed on May 26, 2016, with an identical description. Finally, a listing for "Compliance Analyst" was posted on July 7, 2016.

Clayton now claims it is in possession of no documents whatsoever related to the creation or listing of the "Mortgage Service Specialist" listing, or, indeed, any advertisements for any positions on the Bank of America Project publicized after the alleged RIF.

On June 6, 2016, Clayton hired two Compliance Analysts and one Compliance "Team Lead."  All three new hires were white.

## ARGUMENT

### I.  *Standard of Review*

Summary judgment should only be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The Court "view[s] all evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Spring Creek Exploration & Production Co., LLC v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018) (quotation omitted). "A fact is material if, under the governing law, it could affect the outcome of the lawsuit." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013) (quotation and alteration omitted). "A factual dispute is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (quotation omitted).

II.      *Analytical Framework Under Title VII and the Colorado Anti-Discrimination Act*

Plaintiffs' claims for discriminatory and retaliatory discharge are brought under Title VII of the Civil Rights Act and the Colorado Anti-Discrimination Act (CADA). (Compl. [Doc. 1] at 8–11, ¶¶ 59–85). Under Title VII, a Plaintiff may rely on circumstantial evidence to prove employment discrimination, using the three-step McDonell Douglas Framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973); *Plotke v.* White, 405 F.3d 1092, 1099 (10th Cir. 2005). CADA claims are likewise evaluated under the McDonell Douglas framework. *Colo. Civil Rights Com'n v. Big O Tires, Inc.,* 940 P.2d 397 (1997); *Williams v. Dept. of Pub. Safety*, 369 P.3d 760, 2015 COA 180, ¶ 48 (Colo. App. 2015) (applying Tenth Circuit case law interpreting Title VII to CADA).

Plaintiffs must first make a prima facie case, showing that they (1) belong to a protected class, (2) suffered an adverse employment action, (3) under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, L.L.C.*, 487 F.3d 790  800 (10th Cir. 2007). The burden to establish a prima facie case is "not onerous," *Plotke,* 405 F.3d at 1099 (citing *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir.2001)), and "de minimis," *id.* at 1101. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

"Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive." *Plotke*, 405 F.3d 1101. Those circumstances include, but are not limited to "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , [and] preferential treatment given to employees outside the protected class . . . A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination,

continued to seek applicants to fill the position." *Plotke*, 405 F.3d at 1101 (quoting *Chertkova v. Connecticut Gen. Life Ins.*, 92 F.3d 81, 91 (2d Cir.1996) (alteration added))."

The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse action. *PVNF*, 405 F.3d at 1099. "A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Plotke*, 405 F.3d at 1102 (quotation omitted). "A plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual." *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Clayton cites two promotion-denial cases, *Simms v. Oklahoma ex rel Dep't of Mental Health & Substance Abuse Services*, 165 F.3d 1321, 1329 (10th Cir. 1999) and *Verniero v. Air Force Academy School District No. 20*, 705 F.2d 388, 390 (10th Cir. 1983), for the propositions that the court does not act to second guess the business judgment of the employer. While Plaintiffs have alleged stunted opportunities for advancement relative to their white colleagues as evidence that their work was not being fairly evaluated and that Clayton acted with discriminatory animus, Plaintiffs' claims are for unlawful termination, not denials of promotion. Neither *Simms*, nor *Verniero*, nor any other case Clayton cites suggests that this Court must afford extra deference to Clayton's purported nondiscriminatory motives because they are described in terms of business judgment. *See, e.g. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) ("[B]ecause a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination.").

III.     *Plaintiff's claims are not time-barred.*

Defendant first contends generally that portions of Plaintiffs' claims are time-barred because the discriminatory behavior occurred more than 300 days prior to their termination. This argument is not well-taken. Plaintiffs' causes of action are for wrongful termination based upon theories of retaliation and race/national origin discrimination. (Compl. [Doc. 1] at 8–11, ¶¶ 59–85). Defendant does not, argue that the instant claims are time-barred, nor can it establish that discriminatory acts which occurred outside the 300-day window are outside the scope of the court's consideration. Fed. R. Ev. 401(a) ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence"); *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.").

IV.     *Clayton is not entitled to summary judgment on either of Plaintiffs' claims*

    **a.   Clayton is not entitled to summary judgment for on claims Plaintiffs have not raised.**

Clayton devotes considerable effort to requesting summary judgment on claims that Plaintiffs have not pled, such as team assignments (Motion at 8–10), failure to promote (10–11), discipline (*id.* at 11–12) and harassment (*id.* at 14–15). Since Plaintiffs have not pled causes of action for these claims (Compl. [Doc. 1] at 8–11, ¶¶ 59–85), these arguments are mostly irrelevant. Further, Plaintiffs object in advance to any attempts by Clayton in its reply brief to transmute these assertions into new bases for its request for summary judgment on the claims Plaintiffs did bring. *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (arguments

raised for the first time in a reply brief are generally waived); *BPS v. Bd. of Trustees for Colo. School For Deaf & Blind*, No. 12-cv-02664-RM-KLM at, n.27 (D. Colo. Sept. 16, 2015) (same).

As they bear on Plaintiffs' actual claims, and out of an abundance of caution, Plaintiffs will address some of Clayton's contentions below:

### 1.  Team Assignments

Clayton argues that Plaintiffs' "claims" of discrimination surrounding team assignments (1) are time-barred; (2) are not an independently actionable "adverse employment action"; and (3) are supportable exercises of its business judgment. As to the first argument, Plaintiffs have not pled a separate cause related to their team assignments, but as those assignments bore on their ultimate discharge, they are still relevant. Fed. R. Ev. 401; *Morgan*, 536 U.S. at 105. As to the second, Plaintiffs' declarations not only support the findings that the work on the foreclosure and loss mitigation teams was more difficult, but the more important finding that the grading metrics used did not account for this difficulty when assessing employee performance. Their declarations are supported by their experience in the industry and firsthand observations, and independently corroborated by nonparty Megan Courtney. The packing of minorities into less-likely-to-succeed teams is circumstantial evidence of racial animus. *Plotke*, 405 F.3d at 1101 (quoting *Chertkova* and noting Plaintiffs may make out prima facie case by showing "a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified."). As to the third, Plaintiff's evidence of pretext is set forth below. *See infra* at IV(b).

### 2.  Failure to Promote

Plaintiffs have not pled a claim for failure to promote, and none of the arguments Defendant raises have any discernible bearing on the claims Plaintiffs have raised.

### 3. Discipline

Plaintiffs have not alleged a stand-alone claim for discriminatory discipline. Plaintiffs have alleged and supplied supporting evidence (including their own declarations and that of Megan Courtney), that the bases for discipline relied upon by Clayton for their ultimate discharge were consistently and disproportionately used against non-white employees. A reasonable factfinder could accept that evidence as true.

### 4. Harassment

Again, Plaintiffs have not pled stand-alone claims for Harassment. That said, the conduct outlined in Plaintiffs' depositions and declarations[1] is supportive of their prima facie claims for discrimination and tends to undermine Clayton's claim that their ultimate "1" scores and discharge were based on their performance and disciplinary records.

**b. A reasonable factfinder, construing all facts in the light most favorable to the Plaintiffs and drawing all disputed inferences in their favor, could conclude they were discharged due to their race and/or national origin.**

Clayton "does not dispute that Plaintiffs can establish a prima facie case of discriminatory discharge." (Motion [Doc. 32] at 12–13). Clayton instead contends that it had legitimate reasons for its decision. It relies on relying on the declaration of Anjanette Derix for the explanation that it was instructed to "reduce the group's headcount as a cost-saving measure," that it did so by

---

[1] In support of its claims that the racist and profane language used by its supervisory employees were not sufficiently severe and pervasive to affect Plaintiffs' terms and conditions of employment, Clayton wholly ignores comments made by Ramos' supervisor Shane Ellis, which included "fuk essays" and "La Raza is for [dogs]." "Ese," is a common slang term for people of Mexican/Latino descent, and "La Raza" (literally "the race") is a well-known term for Hispanic people. Clayton points to no evidence that it took any prompt or effective remedial action in response to these remarks.

ranking all CFIS employees from a scale of 1 to 4, and that it ultimately eliminated eleven positions, ten of which were "1" scores. (Id. at 12–13). The factfinder would not be bound to accept Clayton's account as true, however. There certainly exist "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Clayton's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Plotke*, 405 F.3d at 1102 (quotation omitted). Those include the following[2]:

- Clayton has given inconsistent explanations as to how many positions were eliminated in the reduction in force. To the EEOC, Clayton claimed eight positions were eliminated. It now claims a total of 11 were.

- Clayton has proved unable (or unwilling) to produce documentary evidence, beyond a single email, regarding the process by which employees were considered and chosen for termination, despite acknowledging that such evidence would have been produced. *See Mali v. Fed. Insur. Co.*, 720 F.3d 387, 392–93 (2d Cir. 2013) (jury may permissibly draw adverse inferences where circumstances documents exist but were not produced, even in absence of formal Rule 37 sanctions); *Lompe v. Sunridge Partners*, LLC 54 F. Supp. 3d 1252, 1263–64 (D. Wyo. Oct. 21, 2014), *rev'd in part on other grounds*, 818 F.3d 1041 (10th Cir. 2016) (same).

- Clayton admitted that the Bank of America Project contract had not been cancelled, reduced, or discontinued prior to the reduction in force. *Kendrick*, 220 F.3d at 1230 (employee may show pretext "with evidence that the defendant's stated reason for the adverse employment action was false.").

---

[2] The record support for these factual contentions is cited in Plaintiffs' responsive statement of facts.

12

- Clayton solicited new applicants for the position, under a different job title for a job with the same job responsibilities, the very next day after the reduction in force, and several times thereafter. *See id.*

- Clayton falsely claimed to the EEOC that the newly listed job was for its Tampa office. *See id.*

- Clayton has proven unable (or unwilling) to produce any copies of any of the job advertisements for the relevant time period, or any documents whatsoever surrounding their creation or production. *See Mali*, 720 F.3d at 392–93; *Lompe*, 54 F. Supp. 3d at 1263.

- Clayton hired three white employees to the position of Compliance Analyst (and Compliance Team Lead) three months after the alleged reduction in force. *Kendrick*, 220 F.3d at 1230.

- Both Powell and Ramos testified, based on their knowledge and experience, that the division into teams was made to deliberately disadvantage minority employees, whose evaluations did not take into account the increased difficulty of the modules. Their experiences were also corroborated by a non-party former employee, Megan Courtney.

- For Moreno specifically, there exist inconsistencies in Clayton's claim that he merited a "1" rating due to behavioral issues notwithstanding his good performance and its stated company position that his annual 'exceeds expectations' evaluation accounts for both performance *and* behavior.

These facts, for which there exists sufficient documentary and testimonial evidence, are sufficient to rebut Clayton's claimed legitimate nondiscriminatory reason for termination.

Because a reasonable jury, construing all facts in the light most favorable to Plaintiffs and drawing all inferences in their favor, could conclude that Plaintiffs were fired due to their race and/or national origin, Clayton is not entitled to summary judgment on their claims for discriminatory discharge.

### c. A reasonable factfinder, construing all facts in the light most favorable to the Plaintiffs and drawing all disputed inferences in their favor, could conclude they were discharged in retaliation for their participation in protected activity.

Clayton contends it is entitled to summary judgment on Plaintiffs retaliation claims. To the extent it repeats its prior erroneous legal contentions as to pretext or "business judgment," those contentions should be rejected here too. Clayton does make some additional new arguments as to each Plaintiff's retaliation claim, but those arguments lack merit.

#### 1. Moreno

Clayton argues that Moreno did not engage in protected activity, but merely made general complaints of unfair treatment. (Motion at 16). This contention is belied by his sworn declaration, in which he explains that he did report the issue of disparate discipline on the basis of race/national origin. Clayton also contends that it investigated and rejected Moreno's claims, but this did not give them a right to fire him for raising the concerns in the first place. *See* 42 U.S.C. § 2000e-3(a); *Sweeny v. West*, 149 F.3d 550 (7th Cir. 1998) ("[U]nder Title VII it is unlawful to retaliate against an employee even if the employee's complaints of . . . discrimination (giving rise to the retaliation) are unfounded. The complaints themselves are protected speech under Title VII's terms, . . . meaning an employee may complain (in good faith) without the added burden of having to be right."). Clayton also claims Moreno cannot establish his firing was pretextual, but that is not true. *See supra* IV(b).

2.  Powell

Clayton argues it is entitled to summary judgment on Powell's claims for retaliation because (1) he did not really complain about racial discrimination, but actually retracted his complaint, (2) too much time had passed between his complaint and his termination, and (3) he cannot show the proffered reasons for his termination were pretextual. (Motion at 17). The first argument is untrue as laid out in Mr. Powell's declaration. Quite to the contrary, after Mr. Powell raised concerns about the grading system and racial composition of the teams, Clayton accused him of unprofessional behavior and excuse-making. Powell's supervisor went as far as to threaten him if he did not change his attitude and stop making "excuses."

In support of the second argument, Clayton cites *Meiners v. University of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) for the "holding" that "the passage of even three months between protected activity and an adverse employment action defeats any suggestion of a causal connection." (Motion at 17). The Tenth Circuit has not announced a holding nearly that sweeping. In *Meiners*, the court acknowledged that three months' temporal proximity *standing alone* is insufficient to make a prima facia case of causation in a retaliation claim. Powell does not rely on temporal proximity "standing alone."  Indeed, he was threatened with termination following his very first report of discriminatory activity. Further, Powell's claim for retaliation is also bolstered by Clayton's inability to provide even minimally consistent explanations for its reduction in force, such as the number of persons actually fired, or why it relisted the same positions with a new title the very next day and then lied about it to the EEOC.

The third argument has already been addressed. *See supra IV(b)*.

3.   Ramos

With respect to Ramos, Clayton largely reiterates the arguments made for Moreno and Powell, and they can be rejected for largely the same reasons. Ramos does not rely on temporal proximity alone to show causation, although if he did his latter two reports of discriminatory activity were no more than two weeks prior to his discharge. *Meiners*, 359 F.3d at 1231 (six weeks is sufficient). Clayton asserts that the decision to terminate Ramos had been made prior to his February 2016 complaints, but its failure to produce corroborating documentary evidence (that it almost certainly should have made or should have kept), means a factfinder would not be bound to accept that explanation as true.

Because a reasonable jury, construing all facts in the light most favorable to Plaintiffs and drawing all inferences in their favor, could conclude that Plaintiffs were fired for engaging in protected activity, Clayton is not entitled to summary judgment on their claims for retaliation.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Dated: December 21, 2018

/s/ Logan R. Martin

Zachary S. Westerfield
Logan R. Martin
Westerfield & Martin, LLC
600 17th St. Ste. 2800 S. Tower
Denver, CO 80202
Ph: 303.748.3444
Email: zach@westerfieldlaw.com
           logan@westerfieldlaw.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on December 21, 2018 the foregoing **PLAINTIFF'S MOTION FOR CONTINUANCE OF THE INITIAL SCHEDULING CONFERENCE** was e-filed with the court and served via CM-ECF or by First-Class US Mail to the following:


Darin Mackender
Fisher & Phillips LLP
1801 California St, Suite 2700
Denver, CO 80202
(303) 218-3650
dmackender@fisherphillips.com

Counsel for Defendant


/s/ Logan R. Martin